IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver FOR ANB FINANCIAL, N.A., a federally-chartered financial institution,<br><br>   Plaintiff,<br><br>v.<br><br>L&C PROPERTY MANAGEMENT, LLC, a Utah limited liability company; BRADLEY S. LARSEN and JERRY B. CRONQUIST<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 1:10-cv-00167 DN<br><br>Judge David Nuffer |

   Plaintiff Federal Deposit Insurance Corporation as Receiver for ANB Financial, N.A. ("FDIC-R"), filed a Motion for Summary Judgment on November 30, 2011.[1] Defendants L&C Property Management, LLC, Bradley S. Larsen, and Jerry B. Cronquist filed a Cross Motion for Summary Judgment on January 20, 2012.[2] FDIC-R moved to strike Defendants' Cross Motion for Summary Judgment and Defendants' Arguments in Support thereof.[3] FDIC-R

---

  [1] Docket No. 30.

  [2] Docket No. 43.

  [3] Docket No. 45.

also moved to strike Defendants' Reply Memorandum in Support of Cross Motion for Summary Judgment.[4]  These four motions have been fully briefed and came before this Court for decision.

Based on the briefing, the Court finds as follows:

On October 26, 2006, L&C obtained a $2,075,000.00 loan from ANB and gave ANB a promissory note (the "Note") for the same amount.  Under the Note, L&C promised to pay a variable interest rate that would be calculated daily and that would be 0.25 percent below the prime rate as determined by ANB.  The Note imposed an interest rate of eighteen percent (18%) on the unpaid balance owing after maturity.  Interest payments under the Note were to begin on November 26, 2006.  The Note was to mature on October 26, 2007, with full payment of the principal due on that date.  In the Note, L&C agreed to "pay all costs of collection, replevin or any other similar type of cost if I am in default.  In addition, if you hire an attorney to collection this note, I also agree to pay any fee you incur with such attorney plus court costs. . . ."

On October 26, 2006, Defendant Cronquist executed a guaranty (the "Cronquist Guaranty") of the Note.  The Cronquist Guaranty states that the guaranty "guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender. . . ."  The Cronquist Guaranty obligates Cronquist to "pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with

---

[4] Docket No. 53.

the protection, defense or enforcement of this guaranty in any litigation. . . ." Cronquist has admitted that the Cronquist Guaranty is a valid agreement.

On October 26, 2007, the Note's maturity date, L&C did not pay the principal due under the Note. On November 26, 2007, L&C executed a promissory note (the "Renewal Note") in favor of ANB that extended the Note's maturity date. The Renewal Note had a variable interest rate that was 0.50 percent above the prime rate as determined by ANB. Under the Renewal Note, L&C was obligated to keep making monthly interest payments, with the note maturing and the total principal due on August 26, 2008. The Renewal Note imposed an interest rate of eighteen percent (18 %) on any unpaid balance owing after maturity until paid in full. The Renewal Note retained the same provisions of the Note regarding ANB's ability to recover attorneys' fees and costs.

On November 26, 2007, Defendant Larsen executed a guaranty (the "Larsen Guaranty") of the Note and the Renewal Note. The Larsen Guaranty obligates Larsen to "pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation. . . ."

The Note and the Renewal Note were secured by a Deed of Trust dated October 26, 2006 ("Trust Deed"), whereby L&C granted ANB a security interest in twenty-four parcels of real property in the Love Estates Subdivision situated in Davis County, Utah (the "Love Property"). The Trust Deed requires L&C to pay "all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security

3

Instrument.  This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses."  On August 26, 2008 – *i.e.*, the agreed-upon maturity date – L&C admittedly defaulted on its obligation to pay the principal.  Since that date, L&C has never paid the amounts due under the Note and/or the Renewal Note.

Cronquist has never honored his obligations under the Cronquist Guaranty, and he has never repaid any of the amounts due on the Note and the Renewal Note.  Larsen has never honored his obligations under the Larsen Guaranty, and he has never repaid any of the amounts due on the Renewal Note.

On May 9, 2008, the Office of the Comptroller of the Currency closed ANB and named the Federal Deposit Insurance Corporation as ANB's receiver.  FDIC-R foreclosed on the Love Property, selling it at a properly scheduled and noticed foreclosure sale on July 7, 2010, to an independent third party for $1,000,000.00.  At the date and time of the foreclosure sale, L&C was indebted to ANB and its successors on the Note and the Renewal Note for all principal and accrued interest in the sum of $2,826,091.27.  As of July 7, 2010, the fair market value of the Love Property was $1,120,000.00.[5]

FDIC-R filed the present action on October 4, 2010, less than three months after the July 7 foreclosure sale.

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4)

---

[5] Appraisal, docket no. 31-12, filed on November 30, 2011.

damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).  Defendants signed contracts – i.e., the Note, the Renewal Note, the Larsen Guaranty, and the Cronquist Guaranty – the validity of which is not in question.

Defendants received the benefit of these contracts – i.e., the loan proceeds for which Defendants executed the Note, the Renewal Note, and the Trust Deed in ANB's favor.  The Defendants admit that L&C defaulted on its payment obligations.  Furthermore, both Cronquist and Larsen have failed to honor their obligations under the Cronquist Guaranty or the Larsen Guaranty.  The proceeds of the foreclosure sale of the Love Property were not sufficient to pay the entire balance due under the Note, the Renewal Note, the Cronquist Guaranty, and/or the Larsen Guaranty.  Thus, FDIC-R has not received the benefit of the bargain and has, therefore, been damaged.  Accordingly, the FDIC is entitled to summary judgment on its breach of contract and deficiency claims against Defendants.  Because there is a contract, FDIC-R's claim in the alternate, for unjust enrichment, is not applicable to this action.

Under Utah Code Ann. § 57-1-32, because FDIC-R brought this action within three months of the foreclosure sale, FDIC-R is awarded the difference between (1) the fair market value of the property at the time of the trustee's sale, and (2) the "amount of the indebtedness with interest, costs, and expenses of sale, including trustee's sale and attorney's fees."

At the time of the July 7, 2010, foreclosure sale, the Defendants owed a total of $2,826,091.27 in unpaid principal, interest, costs, and foreclosure-related expenses.  The fair market value of the Love Property at the time of its sale was $1,120,000.00.  FDIC-R is,

therefore, awarded a deficiency judgment in the amount of $1,706,091.27 ($2,826,091.27 - $1,120,000.00 = $1,706,091.27).

Although the Note contains language which purports to invoke Arkansas and federal law as the governing law, this does not alter the analysis in this case. Arkansas Code Ann. § 18-50-107 governs the *manner of conducting* foreclosure sales in Arkansas, and therefore does not apply to this case because the sale occurred in Utah. Arkansas law defers to the law of the situs of the property with regard to questions involving "the alienation, transmission, and descent of real estate," including the transfer of property pursuant to a foreclosure sale. *Tate v. Dinsmore*, 175 S.W. 528, 529 (Ark. 1915). Thus, Utah law applies to the conduct of the sale. Determination of a deficiency amount might be a substantive matter but the choice of law is not material. Arkansas law, like Utah law, limits the amount of the deficiency judgment in this case to the lesser of (a) the difference between the amount of indebtedness (plus interest, costs, and trustee's and attorney's fees) and the fair market value of the property, and (b) the difference between the amount of indebtedness (plus interest, costs, and trustee's and attorney's fees) and the amount for which the property was sold. Ark. Code Ann. § 18-50-112(b) and Utah Code Ann. § 57-1-32.

Additionally, under Utah Code Ann. ¶ 15-1-1(1), "[t]he parties to a lawful contract may agree upon any rate of interest for the loan . . . that is the subject of their contract." As both the Note and the Renewal Note require L&C to pay eighteen percent interest on the balance of all unpaid amounts until paid in full and since both Larsen and Cronquist are bound to these provisions as guarantors, FDIC-R is awarded pre-judgment interest on the deficiency

amount at the rate of eighteen percent (18%) per annum. Thus, the post-default, pre-judgment per-diem interest owed by Defendants is $841.36 ($1,706,091.27 [deficiency total] x .18 [contractual interest rate set by Note and Renewal Note] = $307,096.43 [annual simple interest]; $307,096.43 / 365 [number of days in a year] = $841.36).  Accordingly, through the date of this order, September 21, 2012, FDIC-R is entitled to post-default pre-judgment interest totaling $678,977.52 ($841.36 x 807 (number of days from July 7, 2010, through September 21, 2012) = $678,977.52.

The Trust Deed, the Note, the Renewal Note, the Larsen Guaranty, and the Cronquist Guaranty all contain provisions entitling FDIC-R to recover attorneys' fees and costs incurred in connection with collecting from Defendants and/or enforcing the various contracts. "[A]ttorney fees may be awarded only when they are authorized by statute or contract." *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200, 1205 (Utah 2004).  Furthermore, Utah Code Ann. § 57-1-32 states that "[i]n any action brought under this section, the prevailing party shall be entitled to collect its costs and reasonable attorney fees incurred."  Thus, FDIC-R, as ANB's successor-in-interest, is entitled to recover its reasonable attorneys' fees and costs in an amount to be established by subsequent application.

Lastly, under Utah Code Ann. § 15-1-2(2)(a), "a judgment rendered on a lawful contract shall conform to the contract and shall bear the interest agreed upon by the parties, which shall be specified in the judgment."  The Note and the Renewal Note, which Larsen and Cronquist have guaranteed, impose an interest rate of eighteen percent on all unpaid balances until paid in full.  Because Defendants have violated their contractual obligations, which actions

have entitled FDIC-R its award of summary judgment, FDIC-R is awarded post-judgment interest of eighteen percent per annum on all amounts awarded by this Court.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

1.  FDIC-R's Motion for Summary Judgment[6] is GRANTED; specifically, FDIC-R is entitled to judgment as a matter of law on its claims for deficiency (claim no. 1), claim for breach of contract (claim no. 2), and claim on guaranty against guarantors (claim no. 4).

2.  FDIC-R is awarded judgment in the amount of $1,706,091.27, together with prejudgment interest through the date of the order, in the amount of $678,977.52.  FDIC-R is also awarded its reasonable attorneys' fees and costs in an amount to be established by subsequent application.  Additionally, FDIC-R is awarded post-judgment interest of eighteen percent per annum on all amounts awarded by this Court.

3.  Defendants' Cross Motion for Summary Judgment[7] is DENIED.

4.  FDIC-R's Motion to Strike Defendants' Cross Motion for Summary Judgment and Defendants' Arguments in Support Thereof[8] as well as FDIC-R's Motion to Strike Defendants' Motion to Strike Defendants' Reply Memorandum in Support of Cross Motion for Summary Judgment[9] are DENIED.

5.  The clerk of the court is directed to close this case.

---

[6]  Docket No. 30.

[7]  Docket No. 43.

[8]  Docket No. 45.

[9]  Docket No. 53.

DATED this 21st day of September, 2012.

BY THE COURT:

_____
DAVID NUFFER
U.S. District Judge